**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Bruce E. Mueller,<br><br>        Plaintiff,<br><br>v.<br><br>Commissioner  of  Social  Security<br>Administration,<br><br>        Defendant. | No. CV-20-08344-PCT-JAT<br><br>**ORDER** |

Pending before the Court is Plaintiff Bruce Mueller's appeal from the Commissioner of the Social Security Administration's ("SSA") denial of social security supplemental income. (Doc. 30). The appeal is fully briefed (Doc. 30, Doc. 33, Doc. 36), and the Court now rules.

## I.   BACKGROUND

The issues presented in this appeal are whether substantial evidence supports the Administrative Law Judge's ("ALJ") determination that Plaintiff was not disabled from August 21, 2017, to April 8, 2020, and whether the ALJ committed legal error in his analysis. (Doc. 16-3 at 19; *see also* Doc. 30 at 4–5).

### a.  Factual Overview

Plaintiff was 57 years old at the date of his application. (Doc. 16-3 at 29). He has at least a high school education and no past relevant work experience. (*Id.*) Plaintiff filed his social security supplemental income claim on August 21, 2017, alleging disabilities beginning on December 31, 2002, including left leg neuropathy, status post left knee

1    replacement, and attention deficit hyperactivity disorder ("ADHD"). (*Id.* at 18, 21). An

2    ALJ denied Plaintiff's claim on April 8, 2020. (*Id.* at 31). The SSA Appeals Council denied

3    a request for review of that decision and adopted the ALJ's decision as the agency's final

4    decision. (*Id.* at 2).

5              **b.  The SSA's Five-Step Evaluation Process**

6              To qualify for social security benefits, a claimant must show he "is under a

7    disability." 42 U.S.C. § 423(a)(1)(E). A claimant is disabled if he suffers from a medically

8    determinable physical or mental impairment that prevents him from engaging "in any

9    substantial gainful activity." *Id.* § 423(d)(1)–(2). The SSA has created a five-step process

10   for an ALJ to determine whether the claimant is disabled. *See* 20 C.F.R. § 416.920(a)(1).

11   Each step is potentially dispositive. *See id.* § 416.920(a)(4).

12             At the first step, the ALJ determines whether the claimant is "doing substantial

13   gainful activity." *Id.* § 416.920(a)(4)(i). If so, the claimant is not disabled. *Id.* Substantial

14   gainful activity is work activity that is both "substantial," involving "significant physical

15   or mental activities," and "gainful," done "for pay or profit." *Id.* § 416.972(a)–(b).

16             At the second step, the ALJ considers the medical severity of the claimant's

17   impairments. *Id.* § 416.920(a)(4)(ii). If the claimant does not have "a severe medically

18   determinable physical or mental impairment," the claimant is not disabled. *Id.* A "severe

19   impairment" is one which "significantly limits [the claimant's] physical or mental ability

20   to do basic work activities." *Id.* § 416.920(c). Basic work activities are "the abilities and

21   aptitudes necessary to do most jobs." *Id.* § 416.922(b).

22             At the third step, the ALJ determines whether the claimant's impairment or

23   combination of impairments "meets or equals" an impairment listed in Appendix 1 to

24   Subpart P of 20 C.F.R. Part 404. *Id.* § 416.920(a)(4)(iii). If so, the claimant is disabled. *Id.*

25   If not, before proceeding to step four, the ALJ must assess the claimant's "residual

26   functional capacity" ("RFC"). *Id.* § 416.920(a)(4). The RFC represents the most a claimant

27   "can still do despite his limitations." *Id.* § 416.945(a)(1). In assessing the claimant's RFC,

28   the ALJ will consider the claimant's "impairment(s), and any related symptoms, such as

pain, [that] may cause physical and mental limitations that affect what [the claimant] can do in a work setting." *Id.*

At the fourth step, the ALJ uses the RFC to determine whether the claimant can still perform his "past relevant work." *Id.* § 416.920(a)(4)(iv). The ALJ compares the claimant's RFC with the physical and mental demands of the claimant's past relevant work. *Id.* § 416.920(f). If the claimant can still perform his past relevant work, the ALJ will find that the claimant is not disabled. *Id.* § 416.920(a)(4)(iv).

At the fifth and final step, the ALJ determines whether—considering the claimant's RFC, age, education, and work experience—he "can make an adjustment to other work." *Id.* § 416.920(a)(4)(v). If the ALJ finds that the claimant can make an adjustment to other work, then the claimant is not disabled. *Id.* If the ALJ finds that the claimant cannot make an adjustment to other work, then the claimant is disabled. *Id.*

### c.  The ALJ's Application of the Factors

Here, at the first step, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of his disability. (Doc. 16-3 at 21).

At the second step, the ALJ determined that Plaintiff's left leg neuropathy, status post left knee replacement, and ADHD constituted severe impairments under 20 C.F.R. 416.920(c). (*Id.* at 21).

At the third step, the ALJ determined that Plaintiff's impairments did not meet the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 21). After evaluating Plaintiff's RFC, the ALJ concluded that Plaintiff could perform medium work as defined in 20 C.F.R. § 416.967(c) "except he can lift/carry 50 pounds occasionally and 25 pounds frequently." (*Id.* at 23). The ALJ also found that "[d]uring [an] eight-hour workday, the claimant can stand/walk for 6 hours and sit for 6 hours." (*Id.*) The ALJ further found that "[h]e can push/pull as much as he can lift/carry," he "can frequently balance, stoop, kneel, crouch, crawl, and climb ramps/stairs, but never ladders, ropes, or scaffolds" and "[h]e must avoid working around unprotected heights." (*Id.*) Finally, the ALJ noted that Plaintiff "is able to perform simple, routine tasks." (*Id.*)

At the fourth step, the ALJ concluded that Plaintiff has no past relevant work. (*Id.* at 29).

At the fifth step and final step, the ALJ concluded that given Plaintiff's age, education, work experience, and RFC, a significant number of jobs existed in the national economy that he could have performed. (*Id.* at 29–30). Accordingly, the ALJ determined that Plaintiff was not disabled. (*Id.* at 30).

## II.    LEGAL STANDARD

This Court may not overturn the ALJ's denial of disability benefits absent legal error or a lack of substantial evidence. *Luther v. Berryhill*, 891 F.3d 872, 875 (9th Cir. 2018). "Substantial evidence means … such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (quoting *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988)). On review, the Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the [ALJ's] conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Id.* (quoting *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014)). The ALJ, not this Court, draws inferences, resolves conflicts in medical testimony, and determines credibility. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984). Thus, the Court must affirm even when "the evidence admits of more than one rational interpretation." *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). The Court "review[s] only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Garrison*, 759 F.3d at 1010.

## III.    DISCUSSION

Plaintiff raises a litany of issues for consideration, which the Defendant reasonably recategorizes into the following seven issues: (1) whether substantial evidence supports the ALJ's rejection of Plaintiff's subjective symptom testimony; (2) whether the ALJ properly rejected the lay witness's statements; (3) whether the ALJ reasonably relied on the opinion

of Dr. Palmer; (4) whether the ALJ relied on substantial evidence at step two to determine which of Plaintiff's impairments were severe; (5) whether the ALJ relied on substantial evidence at step three in finding that Plaintiff's impairments did not meet or medically equal any impairment listing; (6) whether the ALJ relied on substantial evidence at step five in determining that a significant number of jobs existed in the national economy that he could have performed despite his limitations; and (7) whether there is any merit to Plaintiff's several allegations of procedural error. (Doc. 33 at 1–2; *see also* Doc. 30 at 4–5). Plaintiff also requests oral argument and a jury trial on his arguments. (Doc. 36 at 1). The Court addresses each in turn.

### a. Subjective Symptom Testimony

Plaintiff argues that the ALJ erred by rejecting his subjective symptom testimony. (Doc. 30 at 5, 9, 11, 15–18).

The ALJ noted that Plaintiff "alleged disability based on ADHD, back arthritis, neuropathy, left leg neuropathy, total knee arthroplasty, and anxiety." (Doc. 16-3 at 23). At the hearing, Plaintiff testified that he had trouble finding a job "due to holes in his resume, saying the wrong thing in the interview, and not being called for interview." (*Id.* at 24). Plaintiff also testified that he injured his knee, is a perfectionist, causing him issues with finishing jobs, is easily distracted, and has fast speech that causes confusion. (*Id.*) Plaintiff further testified that he was prone to "impulsivity, not doing well with deadlines, and frustration with others." (*Id.*) Plaintiff testified that his wife and siblings help him stay organized and on task. (*Id.*) Regarding his physical impairments, Plaintiff testified that he had "ongoing pain in his left leg with foot numbness" and that his morphine dose was increased because of his pain. (*Id.*) Plaintiff testified that he did not attend mental health treatment because he moved every few weeks and could not drive to the appointments because they were out of his way. (*Id.*) Plaintiff further testified that he could walk for one or two miles a time, stand in only one position, and could not do a sitting job because of his left leg. (*Id.*) Plaintiff's brother and wife also submitted statements averring that Plaintiff's impairment affect his ability to meet the demands of employment. (Doc. 16-7 at

16–23; Doc. 16-3 at 11–12).

The Ninth Circuit has established a two-step analysis for an ALJ to determine whether to credit a claimant's subjective symptom testimony. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017) (quoting *Garrison*, 759 F.3d at 1014–15). If the claimant presents such evidence, the ALJ then evaluates the claimant's subjective complaints. *See id.* "In evaluating the credibility of pain testimony after a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). Instead, an ALJ must provide "specific, clear, and convincing reasons" for doing so. *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014).

An ALJ's credibility determination "must rely either on reasons unrelated to the subjective testimony (e.g., reputation for dishonesty), on conflicts between her testimony and her own conduct, or on internal contradictions in that testimony." *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). In analyzing whether to discount a claimant's testimony, "[t]he ALJ must identify the testimony that was not credible and specify 'what evidence undermines the claimant's complaints.'" *Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)). The ALJ's findings "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p, 82 Fed. Reg. 49462, 49467 (Oct. 25, 2017). If the ALJ's path cannot "reasonably be discerned," the ALJ's decision must be reversed. *Treichler*, 775 F.3d at 1103.

While an ALJ may not reject a claimant's subjective complaints based solely on lack of objective medical evidence to fully corroborate the alleged symptoms, *see Rollins*

*v. Massanari*, 261 F.3d 853, 856–57 (9th Cir. 2001); *Fair v. Bowen*, 885 F.2d 597, 602 (9th Cir. 1989), the lack of objective medical evidence supporting the claimant's claims may support the ALJ's finding that the claimant is not credible. *See Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2003). Factors that the adjudicator may consider when making such credibility determinations include the nature, location, onset, duration, frequency, radiation, and intensity of any pain, precipitating and aggravating factors (e.g., movement, activity, environmental conditions), type, dosage, effectiveness, and adverse side-effects of any pain medication, treatment (other than medication) for relief of pain, functional restrictions, and the claimant's daily activities. *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991) (en banc) (citing SSR 88-13, 1988 WL 236011 (July 20, 1988)). "Although an ALJ 'cannot be required to believe every allegation of disabling pain,' the ALJ cannot reject testimony of pain without making findings sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (quoting *Bunnell*, 947 F.2d at 345–46 and *Fair*, 885 F.2d at 603).

Here, at the first step, the ALJ determined that "the claimant's medically determinable impairments could reasonably be expected to produce some of the symptoms of the types alleged." (Doc. 16-3 at 24). At the second step, however, the ALJ determined that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (*Id.*)

With respect to Plaintiff's physical impairments, the ALJ reasoned that "[t]he claimant's allegations regarding the severity of his physical symptoms and limitations are not supported by the objective findings of record or his treatment history." (*Id.*) After a lengthy discussion of the objective medical evidence supporting his conclusion, the ALJ stated:

> Given his improvement with total knee replacement, improvement of his pain with gabapentin and morphine per his reports, his mostly conservative treatment, as a medication

only patient, during the period under consideration, there is no specialized treatment with pain management, neurologist, or physical therapy during this period, his report that he continues to remain active, and his mostly normal physical with normal gait, station, and strength, the undersigned cannot find the claimant is unable to sit, stand, or walk for prolonged periods. That being said, the undersigned considered the claimant's subjective reports of pain and noted limitations in the residual functional capacity.

(*Id.* at 26).

Regarding Plaintiff's mental limitations, the ALJ found:

Despite his allegations of ongoing disabling ADHD and anxiety, there is no evidence that the claimant participated in any regular formal mental health treatment. Even with minimal mental health treatment records, the undersigned considered the claimant's intermittent mental health treatment and found his ADHD is a severe impairment. However, with minimal/conservative treatment or therapy records, the evidence establishes the claimant's mental impairments would not preclude him from performing unskilled work. Rather, the brief notes provided by the claimant's medical providers regarding his essentially normal mental status suggest he is capable of performing simple, routine tasks.

While the undersigned recognizes that the claimant's financial situation is not optimal and it is unfortunate he has not been able to afford healthcare, there is no evidence indicating that the claimant exhausted all resources available to individuals who cannot afford medical treatment or medication such as hospitals, clinics, or community agencies. Overall, the claimant has not sought medical treatment with the frequency that could reasonably be expected from an individual who is suffering from pain or anxiety of the intense and disabling nature, which the claimant alleges.

(*Id.* at 27).

The Court finds the ALJ's provided reasons adequately supported by the record. (*See* Doc. 16-3 at 24–27). For example, as noted by the ALJ, the record evidence shows that Plaintiff is capable of normal daily activities (Doc. 16-7 at 16–23; Doc. 16-14 at 4–12; Doc. 16-15 at 14, 19, 24, 26, 29, 34, 39, 41, 45, 47, 50, 52, 57, 61, 67, 72, 78, 84, 90, 95, 101, 106, 112, 117, 122, 127; Doc. 16-18 at 206), Plaintiff has received only conservative

treatment (Doc. 16-15 at 14–16, 19, 39, 50, 99), and Plaintiff exhibited mostly normal mental status during examinations (Doc 16-13 at 58–61, 109, 113, 120–23; Doc. 16-14 at 2, 6, 15, 20, 25, 30, 35; Doc. 16-15 at 15, 20, 25, 30, 35, 40, 46, 51, 60, 66, 72, 77, 83, 89, 94, 100, 105, 111, 116, 121, 126; Doc. 16-18 at 216; Doc. 16-19 at 29).

The Court also finds that the ALJ's cited evidence provides clear and convincing reasons for discounting Plaintiff's testimony. As noted above, Plaintiff testified that Plaintiff's impairments affect his ability to finish projects, sit for prolonged periods or walk more than two miles, get along with others, and hold a job. (Doc. 16-3 at 24). Plaintiff also testified that he has to rely on his wife and brother to keep him organized and on task. (*Id.*). However, the ALJ observed, and the Court agrees, that Plaintiff was noted to independently take care of his own personal hygiene and finances, had normal gait and station, and only a minor loss of sensation and muscular definition in his left knee without any abnormalities or tenderness. (*Id.* at 25) (citations omitted). Finally, the ALJ appropriately pointed to facts in the record showing that Plaintiff's treatment has been conservative and limited to medications that improved his symptoms. (*Id.* at 24–27). The Ninth Circuit has noted that "evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) (quoting *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995)). Regarding his mental health limitations, the ALJ properly found Plaintiff's testimony inconsistent with medical evidence establishing that Plaintiff's primary care and emergency visits for other ailments included notes that Plaintiff exhibited "essentially normal mental status" because he had clear speech and was well groomed, alert, and oriented. (Doc. 16-3 at 27). The ALJ also relied on the medical opinions of three different medical consultants who opined that Plaintiff was capable of at least the level of work the ALJ prescribed for Plaintiff. (Doc. 16-3 at 28–29).

Because a substantial portion of the record evidence appears to conflict with Plaintiff's subjective account of his limitations, as discussed in the ALJ's opinion, the ALJ did not err in determining that the record evidence was not entirely consistent with

Plaintiff's subjective assessment of his symptoms. Moreover, these findings are factual determinations solely within the ALJ's responsibility and not for this Court to second guess. *Andrews*, 53 F.3d at 1039.

In addition to inconsistency with the medical evidence, the ALJ relied on Plaintiff's inconsistency in his own past reports to consultative examiners and treatment providers as a basis for discrediting his subjective symptom testimony. For example, while Plaintiff alleges that his physical impairments affect his ability to sit, stand, or walk for prolonged periods, the ALJ noted that Plaintiff testified to, and reported to his doctors, that he repeatedly walks between two and three miles a day for exercise without the use of an assistive device and that his condition has improved with medication. (Doc. 16-3 at 24–25). The ALJ did not err by relying on these inconsistencies in Plaintiff's own statements and reported daily activities. *Khanishian v. Astrue*, 238 Fed. App'x 250, 252–53 (9th Cir. 2007) (holding that inconsistent statements are "appropriate" to consider in a credibility determination).

Plaintiff's inconsistent statements and daily activities, taken together with Plaintiff's testimony being inconsistent with the medical evidence, provide clear and convincing reasons to discount Plaintiff's symptom testimony. And although Plaintiff argues that his own interpretations of the medical evidence and Dr. Palmer's extra-record opinion[1] substantiate his claims (Doc. 30 at 5, 9, 11, 15–18), the Court will uphold the ALJ's opinion because it is reasonable and based on substantial evidence in the record. *Morgan v. Comm'r of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999) (holding that "where the evidence is susceptible to more than one rational interpretation," the ALJ's conclusion must be upheld).

Based on the foregoing, the ALJ provided clear and convincing reasons to discount Plaintiff's symptom testimony that were supported by substantial evidence in the record.

---

[1] As addressed later in this Order, the Court finds that the SSA made reasonable efforts to obtain all of Plaintiff's medical records prior to the ALJ and Appeals Council adjudications, such that the Court will not remand for consideration of Dr. Kramer's opinion, to the extent that it exists and substantiates Plaintiff's claims.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### b.  Lay Witness Statements

Next, Plaintiff argues that the ALJ should have credited the third-party statements of Ralph L. Mueller, Plaintiff's brother, and Tanya Lyn Mueller, Plaintiff's wife. (Doc. 30 at 12–13, 18) (citing Doc. 16-7 at 16–23; Doc. 16-3 at 11–12).

Ralph Mueller completed a Third-Party Functional Report in support of Plaintiff's application for disability benefits. (Doc. 16-7 at 16–23). Plaintiff contends that Ralph Mueller's statement should be viewed as more persuasive than a lay witness because he is trained in psychology. (Doc. 30 at 12).

Ralph Mueller stated that although he did not know Plaintiff's then-current daily routine (Doc. 16-7 at 16), Plaintiff occasionally has panic attacks and knee pain that affect his ability to sleep (*Id.* at 17). In response to questions about Plaintiff's ability to engage in personal care, Ralph Mueller checked a box indicating that Plaintiff has "no problem with personal care." (*Id.*) (emphasis omitted). Ralph Mueller notes that Plaintiff is able to efficiently prepare his own simple and "semi-gourmet" meals daily, but that he "often forgets ingredients" and gets distracted. (*Id.* at 18). Ralph Mueller indicates that Plaintiff can clean and paint his house and do laundry and general maintenance, but that he has allergies related to chemicals and his hoarding affects the time it takes to clean. (*Id.*) Ralph Mueller also indicates that Plaintiff "struggles with focus and making priorities," and that Plaintiff "can be impulsive and choose other activities" while ignoring his chores. (*Id.*) Regarding Plaintiff's habits around going outside, Ralph Mueller states that he believes Plaintiff "gets out several times/day," including by driving, walking for "several miles" without rest, hiking, riding a bicycle on his own, shopping for household goods and tools, attending church, and visiting neighbors. (*Id.* at 19–21). Additionally, Ralph Mueller notes that Plaintiff is able to read for leisure, pay his bills, count change, handle a savings account, and use a checkbook. (*Id.*) Regarding Plaintiff's limitations, Ralph Mueller states that Plaintiff has nerve pain while hiking, knee pain while walking, and used to be more active and able to maintain focus prior to the onset of his limitations. (*Id.* at 20). Regarding Plaintiff's social activities and relationships, Ralph Mueller states that Plaintiff enjoys

helping others and can engage is social activities alone, but that he struggles with maintaining and keeping private boundaries in relationships and regulating his "unusual emotional expressions." (*Id.* at 20–21).

Ralph Mueller also indicates that Plaintiff's knee flexibility and strength affect his ability to lift, squat, bend, walk, kneel, talk, climb stairs, and his mental impairments affect his ability to complete tasks, concentrate, follow instructions, and get along with others. (*Id.* at 21). Additionally, Ralph Mueller notes that Plaintiff is easily distracted, does not complete projects that he begins, and struggles to understand written and spoken instructions. (*Id.*) Ralph notes that Plaintiff does not have a problem with authority "if he likes the person," and does not handle stress, changes in routine, or other people touching his personal belongings well. (*Id.* at 22). In the section titled "REMARKS," Ralph Mueller explains:

> I believe my brother requires a thorough psychiatric evaluation to determine a course of treatment, which might include medication, behavior modification, counseling, and so forth. Bruce does not trust others to help him, and would prefer to limit an evaluation to treating one or two symptoms, rather than underlying causes. He may well be on the autism spectrum; suffers from obsessive/compulsive disorder, but may have some underlying psychological issues which prevent him from gaining and keeping employment. I believe without such evaluation and treatment that Bruce will continue to be unemployable. He may in fact be permanently disabled.

(*Id.* at 23). Ralph Mueller's statement is identified as Exhibit No. 3E in the administrative record. (*See id.* at 16–23). The ALJ did not explicitly address Ralph Mueller's statement in his decision. (*See generally* Doc. 16-3). However, during the ALJ's discussion of Plaintiff's mental impairments at Step Three, the ALJ cites to Ralph Mueller's statement four times, as support for the ALJ's conclusions that Plaintiff is able to prepare meals, pay bills, drive, take medications, shop, attend church, and read. (Doc. 16-3 at 22).

At the outset, the Court finds that Ralph Mueller's statement is properly considered lay witness testimony. The applicable regulations define a "medical source" as "an individual who is licensed as a healthcare worker by a State and working within the scope

of practice permitted under State or Federal law." 20 C.F.R. § 416.902(d). In contrast, a lay witness (nonmedical source), is defined as "a source of evidence who is not a medical source," including the claimant, educational personnel, social welfare agency counsel, family members, caregivers, friends, neighbors, employers, and clergy. *Id.* § 416.902(e). Regardless of Ralph Mueller's touted background in psychology, he does not fit the definition of medical source because Plaintiff does not contend that Ralph Mueller is a licensed healthcare worker working within the scope of his practice or otherwise evaluated Plaintiff and provided his statement as a licensed healthcare professional.

The applicable regulations require the agency to consider testimony from a claimant's family and friends. *See* 20 C.F.R. §§ 416.929(c)(3), 416.945(a)(3). The regulations, however, "do not require the ALJ to provide express reasons for rejecting testimony from each lay witness." *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. § 416.902(a) (clarifying that contrary to the statement in *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993), that "[i]f the ALJ wishes to discount the testimony of the lay witnesses, he must give reasons that are germane to each witness," an ALJ is not required to "discuss every witness's testimony on a[n] individualized, witness-by-witness basis").

The limitations and disabilities contained in Ralph Muller's statement are consistent with Plaintiff's subjective symptom testimony, which the ALJ found unpersuasive for reasons supported by substantial evidence, as discussed above. At best, the lay witness testimony merely corroborates Plaintiff's properly discredited testimony. Therefore, the ALJ's decision not to provide explicit analysis of Ralph Mueller's statement was not made in error where those statements merely corroborate Plaintiff's properly discredited testimony. *See Andrews*, 53 F.3d at 1039–40 ("The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities. We must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation.") (citations omitted). Moreover, the ALJ properly relied on Ralph Mueller's statement for support that Plaintiff is able to perform daily activities that would indicate

1   Plaintiff is not disabled, including driving, personal care, and managing his personal
2   finances, as addressed above.

3          In addition, Plaintiff's wife submitted a letter to the Appeals Council. (Doc. 16-3 at
4   11–12). In that letter, she stated that Plaintiff's ADHD causes him to have trouble
5   concentrating, finishing projects, and unstable mood. (*Id.*) The Appeals Council noted that
6   they received and reviewed Plaintiff's additional evidence submitted after the ALJ
7   rendered his decision and determined that such evidence combined with the underlying
8   record did not create a reason for the Appeals Council to review the ALJ's decision. (*Id.* at
9   2). However, the Appeals Council's decision to deny review of the ALJ's decision in view
10  of Tanya Mueller's statement is not before this Court on appeal, and the Court does not
11  find that the statement would have changed the outcome of the ALJ's decision had it been
12  before the ALJ.

13          **c.  Consultative Examiner Dr. Palmer's Opinion**

14          Plaintiff argues that the ALJ improperly relied on Dr. Palmer's "completely bogus"
15  opinion that Plaintiff is capable of performing work at the medium exertional level. (Doc.
16  30 at 23). Plaintiff contends that Dr. Palmer's opinion, as adopted by the ALJ, is
17  contradictory to a majority of the record evidence, and should be given less weight than
18  that of his treating physicians. (*Id.*)

19          Dr. Palmer examined Plaintiff on December 16, 2017, at the agency's request. (Doc.
20  16-3 at 28) (citing Doc. 16-14 at 4–12). Dr. Palmer noted that Plaintiff reported pain and
21  numbness in his left knee, but no instability or joint pain. (Doc. 16-14 at 4). Dr. Palmer
22  also reported that although Plaintiff stated he had back pain, Plaintiff also stated he has no
23  pain with gabapentin and can regularly lift weighted objects. (*Id.*) Dr. Palmer reported that
24  Plaintiff can independently care for his personal hygiene and does not use any special
25  assistive devices while doing so. Dr. Palmer noted that Plaintiff claims to only be able to
26  sit and stand for 30 minutes at a time and walk for one hour without breaks, but regularly
27  walks two miles daily. (*Id.* at 6). During the examination, Plaintiff exhibited normal
28  balance, function, musculoskeletal strength, and range of motion, except for mild

imbalances and weakness in his left leg. (*Id.* at 6–7).

Ultimately, Dr. Palmer drafted an opinion concluding that Plaintiff was capable of performing medium work with frequent crawling, kneeling, crouching, and climbing ramps/stairs, but never ladders, ropes, or scaffolds. (*Id.* at 9–12). Dr. Palmer opined that Plaintiff had no limitations in stooping, but would need to avoid unprotected heights. (*Id.* at 10–11). As support for his opinion, Dr. Palmer noted that Plaintiff had diminished sensation in his lower left leg, abnormal rapid alternating movement of his left foot, mild imbalance during his toe and heel walking that favored his lower left extremity, and muscular atrophy in his left midcalf. (*Id.* at 11).

The ALJ addressed Dr. Palmer's opinion as follows:

> The undersigned finds Dr. Palmer's opinion persuasive. This is consistent with the overall medical evidence showing mostly normal motor strength, tone, and movement of all extremities without contractures, bony abnormalities, malalignment, tenderness, cyanosis, edema, varicosities, or palpable cord. [Doc. 16-15 at 16, 21, 26, 31, 36, 41, 47, 52, 61, 67, 72, 78, 84, 90, 95, 101, 112, 117, 122, 127].  In 2018, 2019, and 2020, the claimant reported he continued to exercise 7 days a week by walking. The claimant denied having exercise intolerance. [Doc. 16-15 at 14, 19, 24, 26, 29, 34, 39, 41, 45, 47, 50, 52, 57, 61, 67, 72, 78, 84, 90, 95, 101, 106, 112, 117, 122, 127]. Furthermore, he has had mostly conservative treatment as medications only patient with no ongoing treatment with pain management specialist, neurologist, or physical therapy, during the period under consideration. In fact, the claimant continued to report that his pain was well controlled with his current medication regimen. [Doc. 16-15; Doc. 16-16]. Therefore, there is no objective evidence showing the claimant is disabled as he alleges.

(Doc. 16-3 at 28).

The law previously distinguished between the opinions of treating physicians, examining physicians, and non-examining physicians. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). This distinction was known as the "treating physician rule." *See Edlund v. Massanari*, 253 F.3d 1152, 1158 (9th Cir. 2001), as amended on reh'g (Aug. 9, 2001). "In March of 2017, [t]he Social Security Administration amended their regulations

to abrogate the treating physician rule, among other changes." *Alonzo v. Comm'r of Soc. Sec. Admin.*, No. CV-18-08317-PCT-JZB, 2020 WL 1000024, at *3 (D. Ariz. Mar. 2, 2020) (citing *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5852–57 (Jan. 18, 2017)). The new regulations apply to claims filed on or after March 27, 2017. 20 C.F.R. § 416.920c. The new regulations provide that the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." *Id.*

Furthermore, the ALJ will consider all medical opinions according to several enumerated factors, including whether the opinion is supported by objective medical evidence and whether the opinion is consistent with the evidence from other sources. *Alonzo*, 2020 WL 1000024, at *3. Under the new regulations, the ALJ must consider and explain how well the medical evidence supports the medical opinion and how consistent the medical opinion is with the record, and may, *but is not required to*, explain how the other factors under § 416.920c(c)(3)–(5) are considered. 20 C.F.R. § 416.920c(b)(3).

"When the evidence before the ALJ is subject to more than one rational interpretation, [the Court] must defer to the ALJ's conclusion." *Batson*, 359 F.3d at 1198. This is so because "[t]he [ALJ] and not the reviewing court must resolve conflicts in evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) (citations omitted).

Substantial evidence supports the ALJ's determination that Dr. Palmer's opinion is supported by and consistent with the objective medical evidence. (Doc. 16-3 at 28); *see Trevizo*, 871 F.3d at 675 ("The ALJ can meet his burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.") (quotations omitted). The ALJ used the standard set forth at 20 C.F.R. § 416.920c in evaluating each medical opinion in evidence. (Doc. 16-3 at 28–29). For example, the ALJ noted that Dr. Palmer "opined the claimant could perform

medium work with frequent crawling, kneeling, crouching, and climbing ramps/stairs, but never ladders, ropes or scaffolds" with "no limitations in stooping." (Doc. 16-3 at 28). The ALJ properly determined that these limitations were supported by the record, including "overall medical evidence showing mostly normal motor strength, tone, and movement of all extremities without contractures, bony abnormalities, malalignment, tenderness, cyanosis, edema, varicosities, or palpable cord" and Plaintiff's own reports of exercising 7 days per week and his conservative pain management and treatment. (*Id.*)

To the extent that Plaintiff is arguing that the ALJ's interpretation of the record evidence is contradicted by medical opinions from Dr. Hilaire, Dr. Oldham, and Dr. Kramer (Doc. 30 at 13, 16, 20), those medical opinions are not part of the administrative record, and the Court is limited to reviewing evidence that was part of the formal record before the ALJ and Appeals Council. *See* 42 U.S.C. § 405(g).

Finally, in his reply, Plaintiff only argues that the updated regulations on evaluating medical opinions, 20 C.F.R. § 416.920c(a), are invalid and violate his rights. (Doc. 36 at 7). On this record, the Court will not decide whether a properly promulgated regulation violates Plaintiff's rights where that argument was not raised in his Opening Brief, is not responsive to Defendant's Response Brief, and Defendant has had no opportunity to brief the issue because it was raised for the first time in a reply brief on appeal.

### d. Step Two

Plaintiff argues that the ALJ failed to find that several of his asserted impairments constitute severe medically determinable impairments. (Doc. 30 at 9, 11).

At Step Two of the SSA's five-step evaluation process, the burden is on the claimant to establish the existence of a medically determinable impairment prior to his date last insured. 20 C.F.R. §§ 416.912, 416.921; *see also Petty v. Astrue*, 550 F.Supp.2d 1089, 1097 (D. Ariz. 2008). Section 416.921 requires that "a physical or mental impairment [] be established by objective medical evidence from an acceptable medical source" and explicitly excludes a claimant's "statement of symptoms, a diagnosis, or a medical opinion" from consideration. *Id.* § 416.921. While a claimant's symptoms and medical

source opinions are relevant to an overall determination of disability, establishing a medically determinable impairment at Step Two requires that an impairment "result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 416.921. Such anatomical, physiological, or psychological abnormalities must be observed apart from the claimant's symptom statements. *Id.* § 416.902 (definitions); *see also id.* § 416.929 ("[S]tatements about your pain or other symptoms will not alone establish that you are disabled. There must be objective medical evidence from an acceptable medical source that shows you have a medical impairment[] which…would lead to the conclusion that you are disabled."). Additionally, the burden is on the claimant to submit evidence that his impairments are of a severity that would "significantly limit [his] physical and mental ability to do basic work activities." 20 C.F.R. § 416.920(c). Reversible error exists where an ALJ precludes a severe impairment at Step Two and fails to account of any additional function limitations in the RFC assessment. *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

Here, the ALJ reviewed the record evidence, medical opinions, and the lay witness statement before him to determine that Plaintiff had the following severe impairments at Step Two: left leg neuropathy, status post left knee replacement, and ADHD. (Doc. 16-3 at 21). Additionally, the ALJ considered the rest of Plaintiff's limitations and asserted symptoms and included related additional functional limitations into Plaintiff's RFC. (*Id.* at 23–27). The Court does not find that Plaintiff raises any substantiated claim of error at Step Two that warrants reversal.

Regarding Plaintiff's migraines, the record does not support a finding that his migraines constituted severe impairments. Although he was diagnosed with migraines at some point in his medical history, Plaintiff's medical history suggests that he did not discuss them with his treating providers or consultative examiners during the relevant period, except on one occasion in 2020. (Doc. 16-19 at 28). Moreover, Plaintiff admits that his migraines are not disabling in his brief. (Doc. 30 at 10, 14).

With respect to Plaintiff's anxiety, Plaintiff cites to two treatment notes from Terros and Southwest Behavioral & Health Services for support that it should have been considered a disabling impairment. However, in both instances, the treatment notes reflect that Plaintiff himself reported that he had anxiety, not that any tests or formal diagnosis was made by a health care professional. (Doc. 30 at 11) (citing Doc. 16-13 at 63, 78). The ALJ did not err by failing to consider Plaintiff's anxiety a severe impairment without objective medical evidence in the record. *See* 20 C.F.R. § 416.921 ("We will not use your statements of symptoms, a diagnosis, or a medical opinion to establish the existence of an impairment."); *see also id.* § 416.912 (the burden is on the claimant to prove that he is disabled). Moreover, the ALJ considered all of Plaintiff's mental impairments and associated symptoms, including his anxiety, in determining Plaintiff's RFC, finding that Plaintiff's allegations of disability are inconsistent with his total lack of mental health treatment and normal mental status findings in the record. (Doc. 16-3 at 27) ("Overall, the claimant has not sought medical treatment with the frequency that could reasonably be expected from an individual who is suffering from pain and anxiety of the intense and disabling nature, which the claimant alleges.").

Regarding his irritable bowel syndrome ("IBS"), Plaintiff cites to three pages in the record that he argues support his contention that his IBS is a severe impairment. First, Plaintiff cites to office clinic notes from Dr. Kramer from July 23, 2018, that lists "irritable bowel syndrome without diarrhea" as a diagnosis. (Doc. 16-15 at 17). However, within the same treatment notes, Dr. Kramer states that Plaintiff was there to refill medication and "feels fine and currently has no complaints." During his examination, Dr. Kramer noted that Plaintiff had "no abdominal pain, no nausea, no vomiting, no constipation, normal appetite, no diarrhea, not vomiting blood, no dyspepsia, no GERD," Plaintiff appeared "well-nourished," and Plaintiff exhibit normal bowel sounds with "soft, non-distended, no tenderness, no guarding, no rebound tenderness, no masses, [and] no CVA tenderness" in his abdomen. (*Id.* at 14, 16). In other words, Plaintiff fails to cite to any objective medical evidence that would prove that his IBS constitutes a medically determinable impairment.

*See* 20 C.F.R. § 416.921 ("We will not use your statements of symptoms, a diagnosis, or a medical opinion to establish the existence of an impairment."); *see also id.* § 416.912 (the burden is on the claimant to prove that he is disabled). Moreover, Plaintiff's brief also concedes that his IBS "had not been a major problem for Plaintiff in years" and that it only flared up "very recently" from the stress of this appeal. (Doc. 30 at 11). Plaintiff also blames Dr. Palmer for not reporting his IBS symptoms in his consultation examination notes. (*Id.*) The Court has reviewed the record evidence cited by Plaintiff and finds that the ALJ did not err because the cited evidence does not support Plaintiff's claims that his IBS debilitating or otherwise would limit his ability to work.

Regarding Plaintiff's asserted left-hand tendonitis, the Court notes that Plaintiff's medical records do not show any diagnosis or treatment for tendonitis and the ALJ found that Plaintiff had never seen a doctor for his alleged tendonitis, suggesting it was not severe. (Doc. 16-3 at 24).

Regarding Plaintiff's back arthritis, the ALJ noted that Plaintiff had several examinations that showed normal strength throughout his back with no range of motion limitations. (Doc. 16-3 at 25). Moreover, the record indicates that Plaintiff did not seek out treatment for his alleged back arthritis, such that there is limited record evidence available for the ALJ or this Court to review.

The Court also notes that much of Plaintiff's brief is a narrative explaining his interpretation of his own medical conditions without citation to the record, at times indicating that the doctors who performed a given test provided an incorrect diagnosis or failed to submit all of his treatment records to the agency. (Doc. 30 at 12-17). Additionally, Plaintiff cites to new evidence throughout the record for his assertion that the ALJ's disability determination was wrong and that he has several other impairments that the ALJ did not address. However, neither the faults of Plaintiff's treating physicians nor Plaintiff's new evidence are appropriate reasons to reverse an ALJ's decision that is supported by substantial evidence and not based on legal error. *See Andrews*, 53 F.3d at 1039–40 ("The ALJ is responsible for determining credibility, resolving conflicts in medical testimony,

1    and for resolving ambiguities. We must uphold the ALJ's decision where the evidence is

2    susceptible to more than one rational interpretation.") (citations omitted).

3            **e.  Step Three**

4            Plaintiff argues that the ALJ improperly minimized the severity of his ADHD in

5    determining that it only caused him mild limitations in three of the four broad functional

6    areas at Step Three. (Doc. 30 at 9, 12–13). Specifically, Plaintiff argues that the ALJ erred

7    with respect to the following functional categories: interacting with others; concentrating,

8    persisting, and maintaining pace; and in managing himself. (*Id.*)

9            At the outset, the Court notes that Plaintiff cites to a Third-Party Function Report

10   from his brother, Ralph Mueller, as his only evidence that he had extreme and marked

11   limitations due to his ADHD. (*Id.*) However, as discussed above, the ALJ properly cited to

12   Ralph Mueller's statement as contradictory of Plaintiff's alleged mental impairments

13   because that statement contains admissions that Plaintiff is able to function independently

14   in ways that are inconsistent with his alleged limitations. (*See* Doc. 16-3 at 22). Moreover,

15   neither the ALJ nor the Court can substitute Plaintiff's "allegations of pain or other

16   symptoms for a missing or deficient sign or laboratory finding to raise the severity of [an]

17   impairment[] to that of a listed impairment." *See* 20 C.F.R. § 416.929(d)(3). Such a rule

18   equally applies to witness statements provided by Plaintiff's family members when they

19   are not based on objective medical evidence and instead rely on Plaintiff's own self-

20   reporting.

21          During the five-step sequential evaluation discussed above, when evaluating adult

22   mental impairment severity, the ALJ must rate "the degree of functional limitation resulting

23   from the impairment" of the claimant in four broad areas: (1) understanding, remembering,

24   or applying information; (2) interacting with others; (3) concentrating, persisting, or

25   maintaining pace; and (4) adapting or managing oneself. 20 C.F.R. § 416.920a(c)(3). The

26   claimant's degree of functional limitation is based on the extent to which his impairment

27   interferes with his ability "to function independently, appropriately, effectively, and on a

28   sustained basis." *Id.* § 416.920a(c)(2). When rating the claimant's degree of limitation in

the above four areas, the ALJ uses the following five-point scale: none, mild, moderate, marked, and extreme. *Id.* § 416.920a(c)(4). Once the ALJ rates the claimant's degree of functional limitation, the ALJ then determines the severity of the claimant's mental impairment(s). *Id.* § 416.920a(d). If the ALJ finds the degrees of limitation are "none" or "mild," he will generally conclude the claimant's impairment is not severe, "unless the evidence otherwise indicates that there is more than a minimal limitation in [the claimant's] ability to do basic work activities." *Id.* § 416.920a(d)(2). If the ALJ finds there are severe mental impairments that either do not meet or are not equivalent in severity to any mental disorder listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he will then assess the claimant's RFC. *Id.* §§ 416.920a(d)(3), 416.925, 416.926.

The ALJ must incorporate relevant findings and conclusions based on the above procedure in his written decision. *Id.* § 416.920a(e)(4). The ALJ's written decision must "include the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s)." *Id.* Additionally, the written decision must include a specific finding regarding the degree of limitation in each of the four functional areas described above. *Id.*

Here, the ALJ found that Plaintiff had a moderate functional limitation in understanding, remembering, or applying information, and a mild functional limitation in the remaining three categories. (Doc. 16-3 at 22). Additionally, while the ALJ identified Plaintiff's ADHD as a severe mental impairment, the ALJ determined that Plaintiff did not have any impairment(s) that "met or medically equaled the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1." (*Id.* at 21).

With respect to Plaintiff's ability to interact with others, the ALJ found that Plaintiff had a mild limitation because even though he alleges that he has difficulty getting along with others, "the medical evidence shows that the claimant had a good rapport with providers, was described as pleasant and cooperative, had good interactions with non-medical staff, and appeared comfortable during appointments." (*Id.* at 22) (citing Doc. 16-

7 at 16–23, 24–26; Doc 16-13 at 62–123; Doc. 16-14 at 4–12; Doc. 16-15; Doc. 16-16; Doc. 16-18 at 209–10).

Regarding both Plaintiff's ability to concentrate, persist, and maintain pace and adapt and manage himself, the ALJ found Plaintiff's admissions that he can drive, prepare meals, read, manage funds, use the internet, and handle his own medical care as evidence that he does not suffer from more than a mild limitation in these areas, as he alleges. (*Id.*) Additionally, the ALJ notes that the record failed to show that Plaintiff had issues with being distracted. (*Id.*) (citing Doc. 16-7 at 16–23, 24–26; Doc 16-13 at 62–123; Doc. 16-14 at 4–12; Doc. 16-15; Doc. 16-16; Doc. 16-18 at 209–10).

The Court has reviewed the record evidence and finds that the ALJ's conclusions regarding Plaintiff's mild limitations are supported by substantial evidence and are not erroneous. For example, as the ALJ notes elsewhere in the opinion, Plaintiff's mental status examination results and primary care physician treatment notes contain normal findings regarding Plaintiff's mental health and do not suggest that Plaintiff would have significant limitation in his work ability based on his ADHD or other alleged mental health disorders. (Doc. 16-3 at 26) (citing Doc. 16-7 at 16–23; Doc 16-13 at 120–23 Doc. 16-14 at 2, 6, 15, 20, 25, 30, 35; Doc. 16-15 at 15, 20, 25, 30, 35, 40, 46, 51, 60, 66, 72, 77, 83, 89, 94, 100, 105, 111, 116, 121, 126; Doc. 16-18 at 216; Doc. 16-19 at 29). Although Plaintiff argues, albeit vaguely, that the record could also be interpreted to establish that Plaintiff is disabled, the Court declines Plaintiff's request to second guess the ALJ's interpretation of the medical evidence where it is free from legal error and supported by substantial evidence. *Matney*, 981 F.2d at 1019 ("The [ALJ] and not the reviewing court must resolve conflicts in evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ.").

### f.  Step Five

Plaintiff argues that the ALJ ignored testimony from the vocational expert (VE) regarding the jobs available to a person that had limitations that caused them to be off task

1  during the workday.[2] (Doc. 30 at 11).

2  At the March 16, 2020, hearing, the ALJ elicited testimony from the VE posing a

3  hypothetical that mirrors the adopted RFC. (Doc. 16-3 at 78). The VE testified that such a

4  hypothetical person with the given limitations would be capable of work as a laboratory

5  equipment cleaner, kitchen helper, and hand packager. (*Id.* at 78–80). After the ALJ was

6  finished asking his hypothetical to the VE, Plaintiff's attorney asked the VE an additional

7  hypothetical using the same limitations but adding "that the individual was going to be off

8  task 11 percent out of an eight-hour working day." (*Id.* at 80). In response, the VE stated

9  "[t]he DOT does not express being off task at work. However, I've reviewed a couple

10  articles pertaining to this subject matter, and at 11 percent there are no unskilled jobs

11  available." (*Id.*)

12  Plaintiff contends, without citation to the record, that he realistically is off task over

13  30 percent of the time and that the ALJ should have credited the VE's testimony that no

14  jobs would be available for the hypothetical person who is off task for eleven percent of

15  their workday. (Doc. 30 at 9; Doc. 36 at 7). However, as discussed at length above, the

16  ALJ properly determined that Plaintiff's ADHD caused no more than mild limitations to

17  Plaintiff's ability to concentrate, persist, or maintain pace and adapt or manage himself

18  such that the ALJ's decision to omit an off-task limitation from Plaintiff's RFC is supported

19  by substantial evidence for the same reasons. Plaintiff does not provide any support, in the

20  form of medical evidence or otherwise, that his ADHD would cause him to be off task at

21  work for eleven percent or more of the workday. Thus, the Court finds that the ALJ did not

22  err by choosing not to credit the VE's testimony where such a limitation was not supported

23  by the record.

24  ### g.  Procedural Issues

25  Plaintiff has stated numerous procedural arguments that are without merit. The

---

26  [2] While Defendant's Response argues that Plaintiff is challenging the ALJ's step five

27  determination based on the limitations contained in Plaintiff's RFC, the Court does not construe Plaintiff's brief as raising any arguments regarding Plaintiff's determined RFC. (*See generally* Doc. 30). Indeed, in Plaintiff's Reply, Plaintiff's only response to

28  Defendant's Step Five rebuttal argument is that "ALJ ignored VE off task testimony." (Doc. 36 at 7).

Court addresses each in turn.

### i.  Reasonable Efforts to Obtain Medical Evidence

First, Plaintiff argues that the agency failed to comply with 20 C.F.R. § 416.912 in helping him to acquire his medical evidence from Dr. Kramer. (Doc. 30 at 3). Under Section 416.912, the agency is required to "make every reasonable effort to help [the claimant] acquire evidence from their medical sources." 20 C.F.R. § 416.912(b)(1). The regulation defines "every reasonable effort" as sending both an initial request and one follow up request. *Id.* § 416.912(b)(1)(i). Defendant responds that the agency sent initial and follow up requests to Dr. Kramer's employer Highland Medical Center and that Plaintiff conceded that he received the records from Highland Medical Center which are included in the record as Exhibits 13F, 17F, and 25F. Plaintiff's Reply continues to argue that "Dr. Kramer did not produce the requested records for the relevant period" and that placing the responsibility to collect all of his own records is unreasonable. (Doc. 36 at 8). The Court has reviewed the record and confirms that the Highland Medical Center treatment records from Dr. Kramer dating back to early 2010 are in the record that was before the ALJ. (*See generally* Doc. 16-15; Doc. 16-16 at 2–57; Doc. 16-17; Doc. 16-18 at 2–34; Doc. 19 at 27–31). Plaintiff does not specify what other records are specifically missing from the more than 450 pages provided by Dr. Kramer or provide a credible allegation that the agency did not make reasonable efforts to collect all of his records. Instead, Plaintiff appears to blame Dr. Kramer for his failure to provide the correct records, which is not a reason for this Court to overturn the ALJ's determination. As such, the Court declines to remand on this ground.

### ii.  Consultative Examination Request

Next, Plaintiff argues that the ALJ erred by not hiring a consultative examiner to evaluate Plaintiff's mental health. (Doc. 30 at 22–23). Defendant responds that the ALJ had no duty to hire a consultative examiner because the record was already well-developed and unambiguous. (Doc. 33 at 18–19).

An ALJ has an independent duty in a Social Security case to "fully and fairly

develop the record and to assure that the claimant's interests are considered." *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (quoting *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983)) (internal citations omitted). "The ALJ can develop the record by making a reasonable attempt to obtain medical evidence from the claimant's treating sources, ordering a consultative examination when the medical evidence is incomplete or unclear and undermines ability to resolve the disability issue, subpoenaing or submitting questions to the claimant's physicians, continuing the hearing; or keeping the record open for supplementation." *Alvarez v. Colvin*, No. CV-13-00422-TUC-BPV, 2014 WL 4702281, at *4 (D. Ariz. Sept. 22, 2014) (citing *Tonapetyan*, 242 F.3d. at 1150; 20 C.F.R. § 416.917; 42 U.S.C. § 423(d)(5)(A), (B)). Further, an ALJ must "conduct an appropriate inquiry" only when there is ambiguous evidence or the ALJ finds "the record inadequate to allow for proper evaluation." *Id.* These duties apply regardless of whether the claimant is represented or unrepresented. *Id.* Under the regulations, the Commissioner "has broad latitude in ordering a consultative examination." *Reed v. Massanari*, 270 F.3d 838, 842 (9th Cir. 2001) (citing *Diaz v. Sec'y of Health and Human Services*, 898 F.2d 774, 778 (10th Cir. 1990)).

The ALJ did not err by failing to order a consultative examination at Plaintiff's counsel's request. The record contains hundreds of pages of Plaintiff's medical records dating back over a decade and includes medical opinions from five agency examiners, including two reviewing psychological consultants, that the ALJ evaluated in making his decision. (*See* Doc. 16-3 at 26–29). The ALJ addressed Plaintiff's personal choice to stop attending mental health treatment in 2017, prior to the start of the relevant disability determination period, and noted that Plaintiff's pre-2017 records show generally normal mental status upon examination. (Doc. 16-3 at 27). Moreover, Plaintiff's records indicate that his condition improved with therapy and medication, as noted by the ALJ. (Doc. 16-3 at 26–27). Moreover, the ALJ also noted that upon review of Plaintiff's mental health history:

> [T]here is no evidence indicating that the claimant exhausted
> all resources available to individuals who cannot afford

> medical treatment or medication such as hospitals, clinics, or
> community agencies. Overall, the claimant has not sought
> medical treatment with the frequency that could reasonably be
> expected from an individual who is suffering from pain or
> anxiety of the intense and disabling nature, which the claimant
> alleges."

(Doc. 16-3 at 27). The Court agrees that there is nothing else in the record to suggest that Plaintiff suffered from severe or disabling mental health symptoms. Accordingly, there was sufficient evidence in the record from which to conclude that Plaintiff's psychological symptoms were non-disabling, and the ALJ did not err by failing to order a psychiatric consultative examination where the record was unambiguous and seemingly adequate. *See McLeod v. Astrue*, 640 F.3d 881, 884 (9th Cir. 2011) (ALJ had no duty to further develop the record when there was "nothing unclear or ambiguous" about what the treating physicians said). Furthermore, Plaintiff presents no argument on appeal that the record was inadequate to properly evaluate the evidence or that the evidence itself was ambiguous. (*See* Docs. 30, 36).

### iii.  Alleged Ineffective Assistance of Counsel

Next, Plaintiff argues that he had ineffective assistance of counsel at his hearing such that he is entitled to a remand, while at the same time conceding that effective assistance of counsel is not a claim for error in the social security context. (Doc. 30 at 5, 20). As discussed above, this Court's review is limited to considering whether the ALJ's decision is supported by substantial evidence and free from legal error. *Luther*, 891 F.3d at 875 (holding that the district court's review of the ALJ's decision is limited to determine whether there is a legal error or a lack of substantial evidence). As such, the Court declines to consider Plaintiff's ineffective assistance of counsel claim on the merits.

### iv.  Telephonic Hearing

Plaintiff further argues that the ALJ "committed a procedural violation" by holding a telephonic hearing over Plaintiff's objections and denying Plaintiff's requests for a hearing continuance. (Doc. 30 at 21). While not entirely clear, it appears that Plaintiff asserts that there were procedural violations related to both the December 2019 and March

2020 telephonic hearings.

Regarding the December 10, 2019, hearing, Defendant submits that this hearing was preliminary and when Plaintiff attempted to testify regarding his limitations, the ALJ reiterated that his full adjudication would be set for a different date after Plaintiff sought a postponement to get counsel. (Doc. 33 at 20) (citing Doc. 16-3 at 97–98). The Court has reviewed the transcript and does not find any error on the part of the ALJ.

Regarding the March 16, 2020, hearing, under 20 C.F.R. § 416.1436(c)(2), the agency has discretion to schedule a telephonic hearing in lieu of an in person hearing where "in person is not possible or other extraordinary circumstances prevent you from appearing… in person." Defendant submits that the hearing was scheduled to occur just as the COVID-19 pandemic began to affect the Social Security Administration offices. (Doc. 33 at 19). The Court finds no error in the agency's decision to hold telephonic hearings in response to the worldwide pandemic.

### v.   Hearing Transcripts

Next, Plaintiff argues that he is unable to understand the hearing transcript because it contains multiple instances where the court reporter wrote "[INAUDIBLE]." (Doc. 30 at 6). Defendant responds that each instance "represent[s] the standard cross talk seen in any recording" and that the transcript can be plainly understood. (Doc. 33 at 20). The Court has reviewed the transcript and agrees with Defendant that the substance of the hearing appears to be reflected in the transcript, notwithstanding the sections that were not transcribed as inaudible. The Court also notes that in many of these instances, Plaintiff's insistence on speaking over the ALJ's and his own attorney's questions contributed to the issue, and the questions were repeated in their entirety after Plaintiff finished speaking. (*See* Doc. 16-3 at 50). Therefore, the Court does not find any error that affected the ALJ's determination.

### vi.   The ALJ's Alleged Bias

Plaintiff makes several arguments that the ALJ was biased against Plaintiff, summarized by Defendant as follows:

> (1) The ALJ did not include anxiety as a severe impairment (Doc. 30 at 12);

(2) The record does not include "all records" from Dr. Kramer, despite Plaintiff being represented and having the responsibility to retrieve those records (Doc. 30 at 16) (emphasis removed);

(3) Dr. Palmer's opinion is contradicted by the opinion of a doctor not in evidence (Doc. 30 at 17);

(4) The ALJ interrupted his representative during his hearing (Doc. 30 at 21); and

(5) The ALJ denied his requests for postponement and a consultative examiner (Doc. 30 at 22).

(Doc. 33 at 21).

ALJs are presumed to be unbiased. "This presumption can be rebutted by a showing of conflict of interest or some other specific reason for disqualification." *Rollins*, 261 F.3d at 857–58 (quoting *Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir. 1999)). "But expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women sometimes display, do not establish bias." *Chavez v. Social Sec. Admin.*, No. CV-14-02654-PHX-DGC, 2016 WL 1104624, at *2 (D. Ariz. Mar. 22, 2016) (quoting *Valentine v. Comm'r*, 574 F.3d 685, 690 (9th Cir. 2009)). Instead, to show bias, a claimant must "show that the ALJ's behavior, in the context of the whole case, was so extreme as to display clear inability to render fair judgment." *Bayliss v. Barnhart*, 427 F.3d 1211, 1214–15 (9th Cir. 2005). A plaintiff can also establish bias by identifying a specific conflict of interest or other reason for the ALJ's disqualification. *Id.* at 1215.

Here, none of the reasons provided by Plaintiff rise to the level of extreme behavior that the Court could infer the ALJ's "inability to render fair judgment." *Id.* at 1214–15. Thus, Plaintiff has failed to overcome the presumption that the ALJ was unbiased in his decision making.

### vii.  New Evidence

Plaintiff also argues that new evidence, not before the ALJ, demonstrates that Plaintiff is disabled and should be considered on appeal. (Doc. 30 at 5, 13, 16–17). However, Plaintiff appears to concede that this evidence was not made of record before the

1    ALJ and the Appeal Council determinations. Because such evidence was not before the

2    ALJ or the Appeals Council, this Court is unable to consider it on appeal. *See* 42 U.S.C. §

3    405(g) (noting that the Court's determination must be based on "the pleadings and

4    transcript of record"); *Brewes v. Commissioner of Social Sec. Admin*, 682 F.3d 1157, 1161

5    (9th Cir. 2012) (holding that the record available to the court on appeal only includes the

6    evidence before the ALJ and any additional materials submitted to the Appeals Council).

7                              **viii.   ALJ Appointment**

8            Plaintiff also argues, admittedly without any proof, that the ALJ was not properly

9    appointed and his decision should be rendered null and void as a result. (Doc. 30 at 20).

10   Because Plaintiff fails to provide any support for his contention (*id.*) and the Defendant

11   rebuts Plaintiff's argument with evidence of the ALJ's proper appointment (Doc. 33 at 22),

12   the Court declines to address this argument substantively.

13                         **ix.   Plaintiff's Remaining Complaints**

14           Finally, Plaintiff argues both that he was denied review of the exhibits contained in

15   his medical record and that he was able to access the exhibits, but only one at a time. (Doc.

16   30 at 7). Defendant notes that Plaintiff was represented by counsel during the time that he

17   was seeking to review his file but has not alleged that his counsel was also unable to access

18   his medical records. (Doc. 33 at 22). Moreover, at the December 10, 2019, hearing, the

19   ALJ explicitly informed Plaintiff of the proper process to request his file from the Social

20   Security office. (Doc. 16-3 at 102–04). As such, the Court declines to remand on this basis.

21           Plaintiff also argues that he was not reimbursed for travel expenses as a result of

22   traveling for hearings, but such an issue is not appealable under 42 U.S.C. § 405(g).

23           To the extent that Plaintiff's briefing contains additional procedural complaints

24   other than those addressed herein, such complaints have not been addressed because they

25   do not bear on any material issues relevant to the Court's review of the ALJ's decision.

26                              **h.   Further Proceedings**

27           Plaintiff requests oral argument and a jury trial on his arguments. (Doc. 36 at 1).

28   Regarding his demand for a jury trial, however, this is an appeal from the Social Security

Commissioner's finding, so Plaintiff is not entitled to a trial, by jury or otherwise. Moreover, oral argument is denied because both parties submitted memoranda discussing the law and facts in support of their positions and oral argument will not aide the Court's decisional process.  *See e.g., Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998); *Lake at Las Vegas Investors Group, Inc. v. Pacific. Dev. Malibu Corp.*, 933 F.2d 724, 729 (9th Cir. 1991).

Additionally, Plaintiff asks the Court to remand for an immediate award of benefits, or in the alterative, a remand of his case back to an alternate ALJ for a rehearing. (Doc. 30 at 24). However, because the Court is affirming the ALJ's decision, the Court denies Plaintiff's request for a remand. *See Leon v. Berryhill*, 880 F.3d 1041, 1047 (9th Cir. 2017), *as amended* (Jan. 25, 2018) (A direct award of benefits is proper "only when the record clearly contradicted an ALJ's conclusory findings and no substantial evidence within the record supported the reasons provided by the ALJ for denial of benefits.").

## IV.    CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that the ALJ decision is **AFFIRMED**. The Clerk of Court shall enter judgment accordingly.

Dated this 13th day of July, 2022.

James A. Teilborg
Senior United States District Judge